LIVINGSTON<br>v.<br>MAR. IN. Co.

---

## HUDSON AND SMITH *v.* GUESTIER.

---

ERROR to the circuit court for the district of Maryland; in an action of trover for coffee and logwood, the cargo of the brig *Sea Flower*, which had been captured by the French, for trading to the revolted ports of the island of *Hispaniola*, contrary to the ordinances of France, and carried into the *Spanish* port of *Baracoa*, but condemned by a *French* tribunal at *Guadaloupe*, and sold for the benefit of the captors, and purchased by the defendant *Guestier*.

Upon the former trial of this case in the court below, a statement of certain facts was agreed to by the counsel for the parties, and read in evidence to the jury, who then found a verdict for the plaintiffs. One of the facts so admitted, and which was then deemed wholly immaterial by both parties, was, *that the Sea-Flower was captured within one league of the coast of the island of Hispaniola.* Upon this fact, which was the only fact in which this case differed from that of *Rose v. Himely*, (*ante, vol.* 4. *p.* 241.) the supreme court reversed the first judgment of the court below, (*see ante, vol.* 4. *p.* 293.) which had been for the plaintiffs, and remanded the cause for further proceedings.

Upon the second trial in the court below, the verdict and judgment were for the defendant.

The jurisdiction of the French courts as to seizures, is not confined to seizures made within two leagues of the coast.<br><br>A seizure, beyond the limits of the territorial jurisdiction, for breach of a municipal regulation, *is* warranted by the law of nations.<br><br>When the reversal is in favour of the defendant upon a bill of exceptions, a new trial must be awarded by the court below.

Vol. VI.           N n

Hudson
v.
Guestier.

The plaintiffs took a bill of exceptions to the opinion of the court, who directed the jury " that if they find from the evidence produced, that the brig *Sea Flower* had traded with the insurgents at *Port au Prince*, in the island of St. Domingo, and had there purchased a cargo of coffee and logwood, and, having cleared at the said port, and coming from the same, was captured by a French privateer, duly commissioned as such, within six leagues of the island of St. Heneague, a dependency of St. Domingo, for a breach of said municipal regulations, that in such case the capture of the Sea Flower was legal, *although such capture was made at the distance of six leagues from the said island of St. Domingo*, or St. Heneague, its dependency, and *beyond the territorial limits or jurisdiction of said island*, and that the said capture, possession, subsequent condemnation and sale of the said Sea Flower, with her cargo, devested the said cargo out of the plaintiffs, and the property therein became vested in the purchaser."

*Harper*, for the plaintiffs in error.

The main question in this case is, whether the French tribunal at Guadaloupe had jurisdiction of a seizure, under the municipal law of St. Domingo, of a vessel seized more than two leagues distant from the coast.

This question was decided by this court in this cause when it was here before. In the case of *Rose* v. *Himely*, (*ante, vol. 4. p. 241.*) this court decided, that the French tribunal had not jurisdiction because the seizure was made more than two leagues distance from the coast; and in this case, (*ante, vol. 4. p. 293.*) this court decided that the French tribunal had jurisdiction, because it appeared by the statement of facts that the vessel was seized within one league from the coast. So also the cases of *Palmer & Higgins* v. *Dutilli*, and *Hargous* v. *The Brig Ceres*, (*ante, vol. 4. p. 298. in note*,) were remanded for further proceedings, because it did not appear whether the seizures in those cases re made within two leagues of the coast.

*P. B. Key* and *Martin*, contra. A nation has a

right to use all the means necessary to enforce obedience to its municipal regulations and laws. It has a right to enforce its municipal laws of trade beyond its territorial jurisdiction. This right is exercised, both by Great Britain and America, to enforce their respective revenue laws. The only limit to this right is the principle that you do not thereby invade the exclusive rights of other nations. The *arretes* relative to the trade of St. Domingo, do not limit the jurisdiction of their tribunals to seizures made within two leagues of the coast.

The French ordonnances, referred to in the sentence of condemnation, embrace four distinct descriptions of vessels;

1. Those found at anchor, &c.

2. Those *cleared for* ports in possession of the revolters.

3. Those coming out of the interdicted ports, with or without a cargo; and,

4. Vessels sailing in the territorial extent of the island, found within two leagues of the coast.

The distance of two leagues expressed in the ordonnance, is limited to the *last* description, and does not apply to either of the three *first*. It is tantamount to the *hovering* acts of Great Britain and the United States. Neither the object nor the policy of the law would admit such a construction. If a vessel had been trading with the blacks, she had only to wait for a fair wind, slip out of port, and in half an hour be beyond the line of the jurisdiction.

### March 17.

LIVINGSTON, J. In this case, when here before, I dissented from the opinion of the court, because I did not think that the condemnation of a French court at Guadaloupe, of a vessel and cargo lying in the port of

*(margin: HUDSON v. GUESTIER)*

HUDSON
v.
GUESTIER.

another nation, had changed the property: but this ground, which was the only one taken by two of the judges in this case, and by three, in that of Himely v. Rose, and was principally and almost solely relied on at bar, was overruled by a majority of the court, as will appear by examining those two cases, which were decided the same day. I am not, therefore, in determining this cause, as it now comes up, at liberty to proceed upon it; and such must have been the opinion of Judge Chase, on the trial of it, who was one of the court who had proceeded on that principle.

Considering it, then, as settled that the French tribunal had jurisdiction of property seized under a municipal regulation, within the territorial jurisdiction of the government of St. Domingo, it only remains for me to say whether it will make any difference if, as now appears to have been the case, the vessel were taken on the high seas, or more than two leagues from the coast. If the *res* can be proceeded against when not in the possession or under the control of the court, I am not able to perceive how it can be material whether the capture were made within or beyond the jurisdictional limits of France; or in the exercise of a belligerent or municipal right. By a seizure on the high seas, she interfered with the jurisdiction of no other nation, the authority of each being there concurrent. It would seem also that, if jurisdiction be at all permitted where the thing is elsewhere, the court exercising it must necessarily decide, and that ultimately, or subject only to the review of a superior tribunal of its own state, whether, in the particular case, she had jurisdiction, if any objection be made to it. And, although it be now stated, as a reason why we should examine whether a jurisdiction was rightfully exercised over the Sea Flower, that she was captured more than two leagues at sea, who can say that this very allegation, if it had been essential, may not have been urged before the French court, and the fact decided in the negative? And, if so, why should not its decision be as conclusive on this as on any other point? The judge must have had a right to dispose of every question which was made on behalf of the owner of the property,

whether it related to his own jurisdiction, or arose out of the law of nations, or out of the French decrees, or in any other way: and, even if the reasons of his judgment should not appear satisfactory, it would be no reason for a foreign court to review his proceedings, or not to consider his sentence as conclusive on the property.

Believing, therefore, that this property was changed by its condemnation at Guadaloupe, the original owner can have no right to pursue it in the hands of any vendee under that sentence, and the judgment below must, therefore, be affirmed.

The other judges (except the Chief Justice) concurred.

MARSHALL, Ch. J. observed, that he had supposed that the former opinion delivered in these cases upon this point had been concurred in by four judges. But in this he was mistaken.

The opinion was concurred in by one judge. He was still of opinion that the construction then given was correct.

He understood the expression *en sortant*, in the arrete, as confining the case of vessels coming out, to vessels taken in the act of coming out. If it included vessels captured on the return voyage, he should concur in the opinion now delivered.

However, the principle of that case (Rose v. Himely) is now overruled.

Judgment affirmed.*

---

* TODD, J. stated that in the case of *Rose* v. *Himely*, at February term, 1808, he concurred in opinion with Judge *Johnson*.

*Harper* stated that one of the judges of the court below had doubted whether, when a case is reversed upon a bill of exceptions and remanded, the court below ought to grant a new trial.

MARSHALL, Ch. J. If it be upon a special verdict, or case agreed, the court above will proceed to give judgment. But when a verdict in favour of a plaintiff is reversed, on a bill of exceptions to instructions given to the jury, there must be a new trial awarded by the court below.