## WOODFORD v. PEOPLE.

*Criminal law — Arson — Indictment — duplicity — cure of error — what suffi-
cient to charge first degree of arson — Criminal evidence — facts constituting
arson in first degree.*

An indictment for árson charging as one offense the burning of thirty-five
houses, which were destroyed by one fire, *held* proper. *Held*, also, that evi-
dence was admissible as to the burning of all of them.

The first and third degrees of arson being two distinct statutory crimes of
different grades of punishment cannot be united in one count.

An indictment for arson charged prisoner with setting fire to the house of P.
and numerous others, but at the close of the evidence the people withdrew
all claim to convict except as to the house of P., and the court charged, that
the jury must convict as to setting fire to that house or acquit. *Held*, to
cure any error in the indictment as to the houses other than that of P.

An indictment for arson charged the prisoner with setting fire to the dwelling-
house of P. and the dwelling-houses of several others, naming some and
describing others as "divers persons to the jurors unknown," and added
"there being then and there within the said dwelling-houses some human
being." *Held*, that the words charged the presence of a human being in
each of the dwelling-houses.

On the trial of an indictment for arson the people gave evidence, showing that
the prisoner was in the vicinity of a hay barn in the same village, which
was burned three hours before the fire in question, shortly before and after
the hay barn·fire broke out. *Held*, that the evidence was admissible espe-
cially upon the question of opportunity and guilty intent.

The fact that before the fire which was set to another house reached the house
of P. she had notice and opportunity to escape did not render the prisoner's
offense not arson in the first degree. The statute has made the fact that
some human being was in the house at the time it was set fire to the test of
the peril, and draws no distinctions as to its imminency.

ERROR to the Madison oyer and terminer to review the con-
viction of Melvin D. Woodford, who was indicted for arson in the
first degree in burning certain dwelling-houses in the village of
Canastota.

The indictment charged as follows:

"The jurors of the people of the State of New York in and for
the body of the county of Madison, being then and there duly
sworn and charged upon their oath, present that William A. Stone
and Melvin D. Woodford, late of the town of Lenox, in the county
of Madison aforesaid, on the 27th day of October in the year of our

Lord one thousand eight hundred and seventy-three at the town of Lenox, in the county of Madison aforesaid, with force and arms in the night time of the said day certain dwelling-houses the property of the several persons hereinafter named and set forth, to wit: One belonging to Eliza A. Perry; two belonging to Elizabeth Young; one belonging to Mary H. Parker; one belonging to John H. Johnson; one belonging to Matthew Worth; one belonging to Alvin Wells; one belonging to a Mrs. Fay; one belonging to Friend A. Andrews; one belonging to Mrs. John Montross; one belonging to Mrs. Delano; one belonging to David H. Rasbach; and others belonging to divers persons to the jurors unknown, in all about thirty-five dwelling-houses then and there situate (there being then and there within the said dwelling-houses some human being) feloniously, willfully and maliciously did set fire to, against the form of the statute in such case made and provided, and against the peace of the people of the State of New York and their dignity.

"Second count. And the jurors aforesaid, upon their oath aforesaid, do further present that the said William A. Stone and Melvin D. Woodford, afterward, to wit: on the day and in the year aforesaid, at the town of Lenox, in the county of Madison aforesaid, with force and arms in the night time of the said day, certain dwelling-houses of divers persons and individuals and people to the jury unknown, and particularly a certain dwelling-house of Eliza A. Perry, one dwelling-house belonging to Mary H. Parker, one dwelling-house of David H. Rasbach, and one dwelling-house of Carrie Bond, one dwelling-house known as the Beecher block in Canastota, N. Y., then and there situate, there being then and there within the said dwelling-houses some human being, feloniously, willfully and maliciously did burn, against the form of the statute in such case made and provided, and against the peace of the people of the State of New York and their dignity."

The fire in question was discovered about one o'clock on the morning of October 27. During the evening of October 26, there was a fire, destroying certain hay barns belonging to the New York Central and Hudson River Railroad Company, and evidence was given at the trial, under defendant's objection and exception, as to the whereabouts of the defendant at the time of that fire.

The jury found the defendant guilty of arson in the first degree, and he was sentenced to the State prison for life. Other facts appear in the opinion.

*Lyman & James*, for plaintiff in error. Both counts of the indictment charged two or more offenses, and this being the case, it is bad for duplicity. *People* v. *Wright*, 9 Wend. 193 ; *Reed* v. *People*, 1 Park. 481 ; *U. S.* v. *Sharp*, 1 Pet. 131 ; *State* v. *Nelson*, 8 N. H. 163 ; Starkie's P. C. 272 ; *State* v. *Howe*, 1 Richard. 260 ; *Commonwealth* v. *Gable*, 1 Serg. & Rawle, 423 ; *Miller* v. *State*, 5 How. (Miss.) 250; *State* v. *Bridges*, 24 Mo. 353; *Commonwealth* v. *Symonds*, 2 Mass. 163; 1 Bish. Cr. Proc., § 189 ; *State* v. *Wise*, 66 N. C. 120 ; 1 Whart. Cr. Law, §§ 258, 595; 1 Arch. Cr. Law & Pl. 265, 269, 270, 1 Bish. Cr. Pr., § 321; 3 Chitty's Cr. Law, 365; *People* v. *Slater*, 5 Hill, 402. The admission of evidence in relation to the hay barn fire was error. Proof of one crime cannot be introduced to support the charge of another. *Reg.* v. *Taylor*, 5 Cox's C. C. 138; *King* v. *Smith*, 9 Dow. & Ry. 178 ; *Ross* v. *Ackerman*, 46 N. Y. 210 ; *Commonwealth* v. *Call*, 21 Pick. 522 ; *King* v. *Vandercomb*, 2 Leach's P. C. 709 ; *Rex* v. *Smith*, 2 C. & P. 633 ; *Dunn* v. *State*, 2 Ark. 229 ; *Dibble* v. *People*, 4 Park. 199; S. C., 5 Park. 28 ; *Roberts* v. *State*, 6 Coldw. 360 ; *Reg.* v. *Oddy*, 5 Cox's C. C. 210 ; *King* v. *Ellis*, 9 D. & R. 174. If Mary H. Parke had time to escape from her house before the fire reached it, it was not arson in the first degree. Roscoe's Cr. Ev. 269 ; *Reg.* v. *Fletcher*, 2 Carr & Kirr. 215 ; *Regina* v. *Paice*, 1 id. 73 ; *Rex* v. *Haughton*, 5 C. & P. 555 ; *Commonwealth* v. *Buzzell*, 16 Pick. 153 ; *State* v. *Stewart*, 6 Conn. 47.

*G. A. Forbes*, district attorney, for the people.

LANDON, J. The prisoner committed but one act, and its consequences were the destruction of thirty-five dwelling-houses. We think it was proper to indict him as for one offense, and, provided the destruction of every house amounted to the same degree of arson, the indictment need contain but one count. Wharton's Cr. Law, § 391. He should be held to have intended the natural and probable consequences of his wicked act. The wrong done was done by him, and it was done with malicious intent. That intent may not have originally embraced all the mischief he produced, and it may have embraced more. The malicious intent being granted its extent must be gathered from the result, and in the absence of evidence to the contrary, be held commensurate with it. No man can shelter himself from punishment upon the ground that the mischief he did was wider than he intended. Roscoe's Cr. Ev. 271,

272. If the description of his crime embraced thirty-five houses, it was because he destroyed so many. If the multitude confused him, he caused the multitude. The people were not obliged to rest with one since the prisoner had not. The objection to the indictment for duplicity in charging the burning of thirty-five houses was therefore not well taken.

For the same reason the people had the right to give evidence as to the burning of all of them. Regarding the entire fire as one transaction, the burning, condition, situation and occupancy of the several houses were simply matters of detail. When, at the close of the evidence, the people elected to proceed as to the burning of one house only, waiving all right to convict as to any of the others, they threw away thirty-four chances of conviction, which, assuming the indictment to be correctly framed as to every house, they had the right to hold and urge against the prisoner. It is difficult to see how he was harmed by it. His counsel did not except. What he assented to then he cannot urge as error now.

The prisoner's counsel further urged upon motion to quash the indictment, and in arrest of judgment after conviction; that the indictment is void for duplicity, upon the alleged ground that it does not state that there was some human being in each one of the dwelling-houses, but in one only, and therefore charges in each count the separate offenses of arson in the first and in the third degree. If the indictment does allege that there was a human being in some of the houses, and does not allege it as to all, then the indictment is obnoxious to the objection. The first degree of arson requires the presence of some human being in the dwelling-house at the time the prisoner sets fire to or burns it; the third degree does not. These two degrees of arson, being two distinct statutory crimes of different grades of punishment, cannot be united in one count. *People* v. *Wright*, 9 Wend. 193; *Reed* v. *People*, 1 Park. 481; *Dawson* v. *People*, 25 N. Y. 399. The reason of the rule is, that if the jury are permitted to find a general verdict of guilty upon such a count the verdict condemns the prisoner for the higher offense charged in it, when the fact might be that the jury only thought him guilty of the lesser crime; and also because some might find him guilty of one and some of the other offenses, and all agree upon neither, in which case he should not be convicted at all. We state the reason of the rule to show that the rule itself is without application in the present case.

The people withdrew all claim to convict except with regard to the single house of Mary H. Parker. The judge distinctly told the jury that they must find the prisoner guilty of setting fire to that house, or acquit him. With this waiver by the people, and this charge by the court, it was no of moment to the prisoner whether the indictment improperly joined other offenses with the one upon which only he was to be judged. If the allegations as to the others were erroneous, the errors were removed by the withdrawal of the charges.

The question was distinctly raised by the prisoner's counsel in his requests to charge and exceptions to refusals to charge whether the indictment charges the prisoner with arson in the first degree in setting fire to the house of Mary H. Parker. If it does not, then the prisoner has been convicted of a crime with which he was not charged, and the conviction cannot be sustained. The point of this objection is, that the indictment does not specifically charge that at the time the prisoner set fire to her house, there was some human being in it. Arson in the first degree, as described by the statute, consists of "willfully setting fire to, or burning in the night time a dwelling-house in which there shall be at the time some human being." The indictment in the first count charges the prisoner with setting fire to the dwelling-house of Mary H. Parker, and the dwelling-houses of several others, naming some, and describing others as "divers persons to the jurors unknown," and then uses these words, "there being then and there within the said dwelling-houses some human being." The second count uses the same words to charge the presence of a human being at the time the houses were burned. Is it a fair construction of these words to say that they do not charge the presence of a human being in each of the dwelling-houses, but only charge the presence of one human being in some one of the multitude? Certainty to a common intent is required. The prisoner had a right to know at and before the trial whether the indictment charged the fact to be that there was a human being in the dwelling-house of Mary H. Parker. If it did, he had to meet a charge placing his liberty for life in peril ; if it did not, then only for a short term of years. The indictment uses the precise words of the statute, and while it may be justly charged that the language employed is not explicit, we are sure that no one can read the indictment without being convinced that it was the intent of the pleader to charge the presence of a human being in each of the

dwelling-houses specified therein. We think it a fair construction of the words employed to hold that they do so charge. This objection, therefore, fails.

Evidence was given by the people, under objection, showing the conduct and whereabouts of the prisoner for several hours preceding the fire. A hay barn was burnt in the same village about three hours previous to the fire in question, and the prisoner was shown to be seen in its vicinity shortly before and after the fire broke out. Had there been no burning of the hay barn, it would not be doubted that evidence might properly be given showing the whereabouts and conduct of the prisoner shortly before the fire in question, especially if it bore upon his opportunity, or guilty intent to do the act. This evidence seems to have been given with this view, and the judge in his charge cautioned the jury to give to it no other effect. We think the criticism of prisoner's counsel, that proof of one offense was given in support of another, is not warranted.

The prisoner's counsel requested the court to charge that if the fire did not reach the house of Mary H. Parker until after she was aroused, and she had time to escape before the fire reached her house, and she neglected to do it, it is not arson in the first degree. Mrs. Parker testified that she was aroused from her sleep by the alarm, that the fire had not then reached her house, that she threw on her wrapper, and, instead of instantly leaving, remained about five minutes to pick up some of her things when the fire caught her house. In view of these facts, the judge properly refused the request. It would be requiring too much to ask the inmates of an exposed house to abandon their shelter and property at the earliest moment out of any sentimental regard for the fate of the incendiary. Arson is an offense against property. It is aggravated when, in addition to the destruction of property, human life is thereby in danger of destruction. Because a party may or does escape with his life, does not prove that it was not in peril. The statute has made the fact that some human being is in the house at the time it is set fire to, the test of the peril, and draws no distinction as to its imminency. *People* v. *Butler*, 16 Johns. 204 ; *People* v. *Orcutt*, 1 Park. 252.

Several other objections were taken, which we think were properly disposed of by the learned justice upon the trial, and it is not necessary to discuss them. The conviction should be affirmed.

*Conviction affirmed.*